IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EMMANUEL PAGE,

                            Plaintiff,                          OPINION AND ORDER

    v.

                                                                       17-cv-450-wmc

DOCTOR HOFFMAN, DOCTOR O'BRIEN
AND BARKER, *et al.*,

                            Defendants.

      *Pro so* plaintiff Emmanuel Page is proceeding in this civil lawsuit against health care employees at New Lisbon Correctional Institution ("NLCI") on Eighth Amendment and negligence claims for delaying or failing to provide him with adequate medical care following an injury to his right shoulder and complaints of knee pain, including denying his requests for pain medication.  Although the court granted Page leave to proceed under 28 U.S.C. § 1915A against Nurse Koreen Frisk, Nurse Melissa Lodging and HSU Manager Candice Warner with respect to his Eighth Amendment claims, and against Warner on a negligence claim, the court denied Page leave to proceed against other, proposed defendants, including Dr. Hoffman, Dr. O'Brien, Nurse Dobbert, Nurse Hentz, Nurse Johnson, and HSU Manager Barker.  (1/28/20 Order (dkt. #12) at 18, 20.)

      Page has since filed two motions:  the first seeks reconsideration of the dismissal of proposed claims against Drs. Hoffman and O'Brien (dkt. #13); and the second seeks to amend his complaint to include additional, proposed allegations with respect to Hoffman, O'Brien and HSU Manager Barker (dkt. #14).  Page having filed his motion to amend promptly after being granted leave to proceed, the court will grant that motion.  Moreover,

having reviewed Page's additional allegations related to defendants Hoffman, O'Brien and Baker in his proposed amended complaint (dkt. #15), the court will also allow him to proceed under § 1915A against defendants Hoffman, O'Brien and Barker on both his deliberate indifference and negligence claims. Finally, in light of the same, the court denies Page's motion for reconsideration as moot.[1]

## ALLEGATIONS OF FACT[2]

Page injured his right upper body in November 2016 while lifting weights and began to experience excruciating pain in his shoulder. In early December, he informed the HSU of his condition and sought treatment for his right shoulder and later for his knees. Dissatisfied with the response, Page filed this lawsuit. For purposes of screening, the court incorporates the factual allegations pleaded in Page's first amended complaint as set forth

---

[1] Page concludes his motion for reconsideration by asking the court to appoint counsel if the court requires Page to file an amended complaint. However, *pro se* litigants do not have a right to counsel in civil cases, *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014); instead, district courts have discretion to assist pro se litigants in finding a lawyer to represent them. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). A party who wants assistance from the court in recruiting counsel must meet certain requirements. *Santiago v. Walls*, 599 F.3d 749, 760–61 (7th Cir. 2010). First, he must show that he is unable to afford counsel and that he made reasonable efforts on his own to find a lawyer to represent him. *Id*. The court accepts that Page is indigent, but he has not shown that he made reasonable but unsuccessful efforts to recruit a lawyer. Indeed, while indicating that he previously had an attorney, he has provided no details about any subsequent, unsuccessful efforts to recruit counsel on his own. Second, Page has not addressed why this is one of the relatively few cases where the legal and factual difficulties exceed the litigant's abilities to represent himself further. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). If anything, Page's filings to date suggest the opposite: Page was capable of preparing a proposed amended complaint and has otherwise adequately represented himself so far in these proceedings. If, as this case proceeds, Page is unable to meet the demands of this lawsuit, he may file a motion for assistance in recruiting counsel that addresses both of the required showings discussed in this footnote.

[2] In addressing any pro se litigant's complaint, the court must read the allegations generously, drawing all reasonable inferences and resolving ambiguities in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

in the court's January 28, 2020 screening order. (*See* dkt. #12, at 1-8.) Page now alleges, and the court assumes for purposes of this screening order, the following, additional allegations related to the previously dismissed defendants Hoffman, O'Brien and HSU Manager Barker:

- On May 1, 2017, Page told Dr. Hoffman he was in "writhing pain" and needed stronger pain medication. Page also stated that he believed shoulder surgery was likely necessary, and that his knees hurt constantly. Hoffman did not prescribe stronger medication, but he did order an MRI of Page's shoulder.

- Page contacted Dr. Hoffman on June 12, 2017, asserting that he was in severe pain and that the prescribed regimen of Tylenol and Meloxicam was not working. Page renewed these complaints during a June 23, 2017 visit with Hoffman and added that he could not lift his right arm. Dr. Hoffman declined to prescribe stronger pain medication at that time because he was waiting for Page's MRI results. Hoffman also refused to (1) administer a cortisone injection in either of Page's knees, (2) order an MRI of Page's knees, or (3) approve a lower tier restriction that would reduce the number of stairs Page had to climb.

- On July 5, 2017, Page saw Dr. Hoffman about the MRI results, which indicated severe glenohumeral joint osteoarthritis. Page also told Hoffman that he was still in excruciating pain as a result of a total loss of cartilage in his shoulder joint and bone spurs. Page noted that the MRI report supported shoulder replacement surgery and asked for stronger pain medication. Although refusing to prescribe stronger medication, Hoffman did arrange for Page to see Dr. O'Brien, an orthopedic consultant for NLCI.

- Dr. O'Brien examined Page on August 18, 2017. Page again asked for surgery and stronger pain medication, citing the MRI report. O'Brien refused to refer Page for a surgery consultation or prescribe stronger medication. Instead, O'Brien "told Page that he had to suffer with the pain" until a new shoulder x-ray could be taken, which O'Brien ordered.

- Page next complained to Dr. Hoffman on August 20, 2017 that O'Brien would not prescribe stronger pain medication even though his pain was severe. He also contacted both Hoffman and O'Brien on October 10, 2017, once again asserting that he needed stronger pain medication and that he had been in excruciating pain since December 2016. Page does not state whether either doctor responded to those assertions.

- Page had an x-ray taken in Madison on October 24, 2017. Dr. Lisa Sienkiewicz examined Page and concluded that he had "severe end stage DJD." She also noted that "all conservative treatment had failed." If a cortisone injection also failed to provide relief, Sienkiewicz indicated that Page's only option would be shoulder replacement surgery. Dr. Hoffman allegedly also signed Sienkiewicz's report. That same day, Page contacted Hoffman and O'Brien to tell them that his condition had worsened, Tylenol and Meloxicam were not working, and he needed surgery. Page does not indicate whether either doctor responded.

- On November 27, 2017, Page received a cortisone injection in his right shoulder from a Dr. Stevenson who allegedly agreed in his report that Page had "end stage DJD" and opined that a steroid injection would not relieve the pain because Page had no articular cartilage in his shoulder joint.

- On December 5, 2017, Page wrote Dr. Hoffman that the cortisone injection had not worked, and asked for stronger medication and surgery. Hoffman did not respond.

- Page also wrote HSU Manager Barker on March 5, 2018, that "the pain was killing him" and asked that Hoffman and O'Brien refer him for a surgery consultation.

- Page next discussed Dr. Sienkiewicz's report with Dr. Hoffman during a March 16, 2018, examination. He reminded Hoffman that his condition was "end stage," and he requested surgery given that all prior treatment options had failed. Hoffman refused Page's request and suggested another cortisone injection to the shoulder.

- Page contacted HSU Manager Barker again on April 22, 2018, and on May 12, 2018, each time asking for shoulder replacement surgery and complaining of shoulder and knee pain. Page states that "nothing was done" in response to his April complaint, and does not indicate whether Barker responded to his May complaint.

- Page received another cortisone injection in his shoulder on June 12, 2018. At that time, Dr. Kirk Davis told Page that his condition had gotten worse and that the injection would not help because there was no articular cartilage in his shoulder joint.

- Page next contacted Drs. Hoffman and O'Brien on June 22, 2018, asking for a consultation to discuss surgery because the cortisone injection had provided no relief. On June 23, 2018, Page further filed a complaint against Hoffman, O'Brien, and Barker asserting that Dr. O'Brien had refused to see Page for several months, his condition had gotten worse, and Dr. Hoffman and O'Brien were refusing to refer him for surgery. HSU Manager Barker did not respond.

4

- Page also visited Dr. Hoffman on June 27, 2018, renewing his complaint of severe pain and his request for surgery since the cortisone injections and prescribed pain medications were still not working. Page again referenced Dr. Sienkiewicz's report, noting that there was no articular cartilage, so steroid injections would not help. Nevertheless, Hoffman again refused to prescribe stronger pain medication or to refer Page to a shoulder replacement specialist.

- Page filed another complaint against Drs. Hoffman and O'Brien on July 6, 2018, after they continued to refuse to refer him for surgery or prescribe stronger pain medication. Page visited O'Brien on August 6, 2018, and told her that his condition had progressed to its "end stage" consistent with Dr. Sienkiewicz's report, and that the steroid injections and medication were not helping. Page again asked for surgery.

- For the next five months, Drs. Hoffman and O'Brien allegedly refused to see Page about his complaints of severe pain.

- Page visited Dr. O'Brien again on February 15, 2019, renewing his complaint of severe pain and request for surgery and stronger pain medication. O'Brien declined Page's requests. When Page complained to Dr. Hoffman about O'Brien on April 25, 2019, reminding him of Dr. Sienkiewicz's conclusion that surgery would be the only option if cortisone injections failed, Hoffman still refused to consider surgery.

- Page contacted a lawyer in June 2019, who shared Page's 2017 MRI and x-ray reports with Dr. Stephen L. Nord. Dr. Nord concluded in an August 23, 2019, report that shoulder replacement surgery had been "the necessary treatment" for Page's shoulder pain in 2017, and that "it was unclear as to why Page did not receive a referral to a shoulder replacement specialist" at that time. A steroid injection, said Nord, would only provide temporary relief at best.

- Page sent Hoffman and O'Brien a copy of Nord's report in September 2019. He does not state whether either doctor acknowledged receiving it.

- Page contacted Drs. Hoffman and O'Brien on July 13, July 31, October 1, October 17, and October 21, 2019, regarding his worsening condition, severe pain, and request for shoulder surgery. Still, neither Hoffman nor O'Brien referred Page to an orthopedic specialist.

## OPINION

As noted, this court previously granted plaintiff leave to proceed on deliberate indifference claims against defendants Frisk, Lodging and Warner, and against Warner on

5

a negligence claim. As plaintiff does not include any new factual allegations in his proposed amended complaint involving these defendants, there is no need to revisit these earlier screening decisions. The operative question for purposes of screening the amended complaint is whether plaintiff should now also be allowed to proceed on deliberate indifference and negligence claims against defendants Hoffman, O'Brien and Barker in light of the new factual allegations summarized above. For the reasons that follow, the court will allow plaintiff to proceed against each of them.

As previously noted, a prison official may violate an inmate's Eighth Amendment right to adequate medical care if the official is deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1979). A "serious medical need" is a condition that a doctor would recognize as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "Deliberate indifference" means that the official is aware of an inmate's medical treatment needs but consciously disregards the risk of non-treatment by failing to take reasonable measures. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Wisconsin's standard for proving medical negligence is less rigorous, requiring only that a plaintiff prove a defendant breached his or her duty of care and the plaintiff suffered injury as a result. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865; *see also Gill v. Reed*, 381 F.3d 649, 658-59 (7th Cir. 2004).

At this early stage in the proceedings, the court concludes that plaintiff's allegations that he suffered significant shoulder damage and pain from his medical condition is sufficient to satisfy his obligation to show a serious medical need. *See Cooper v. Casey*, 97

F.3d 914, 916-17 (7th Cir. 1996) (a medical need may be serious if it causes significant pain). Therefore, the operative question is whether Drs. Hoffman and O'Brien's and Barker's alleged handling of this need support a reasonable inference of deliberate indifference and negligence.

### A. Deliberate Indifference

The court begins with plaintiff's claims of deliberate indifference. As for Drs. Hoffman and O'Brien, plaintiff claims they intentionally persisted in treatment that would be ineffective and refused his need for stronger pain medication and surgery, even after consultation with an orthopedic specialist. In its earlier screening order, the court concluded that the facts then alleged could not support a finding of deliberate indifference against either doctor. For example, as then alleged, Dr. Hoffman had ordered x-rays in 2016 and an MRI in 2017 to confirm the nature and severity of plaintiff's condition. Similarly, Dr. O'Brien had increased the Tylenol regimen, and she ordered physical therapy and additional x-rays after plaintiff's MRI. As the court noted in its initial screening order, absent allegations that Hoffman and O'Brien had been made aware of plaintiff's subsequent complaints of continuing and worsening pain, and that they were indifferent to his pain, no reasonable trier of fact could infer that their treatment decisions exhibited deliberate indifference to plaintiff's serious medical need. (Dkt. #12 at 14-17.)

Now, in far greater detail, plaintiff alleges in his amended complaint that defendants Hoffman and O'Brien acted with deliberate indifference *well after* completion of the MRI, x-rays and their initial examinations of the plaintiff. In particular, plaintiff alleges that defendants continued the same pain medication regimen, as well as several cortisone

7

injections, despite being advised that his condition would not improve due to a lack of cartilage in his shoulder joint and resulting bone spurs, and that he would continue to suffer debilitating pain absent surgery. Plaintiff further alleges that he repeatedly informed Drs. Hoffman and O'Brien during medical visits and in formal, written complaints throughout 2018 and 2019 that neither the steroid injections nor the medication provided any meaningful pain relief. Plaintiff also alleges that Drs. Hoffman and O'Brien were aware of Dr. Sienkiewicz's 2017 report concluding that shoulder replacement surgery would be the only remaining treatment option if cortisone injections proved ineffective and of Dr. Nord's 2019 opinion that surgery was indicated, as a steroid injection would only provide temporary pain relief at best. Despite this knowledge, however, Hoffman and O'Brien allegedly refused to vary their treatment or refer him to an orthopedic surgeon and have at times ignored his complaints altogether.

Although prisoners are not entitled to the specific medical treatment of their choice, *Forbes*, 112 F.3d at 267, plaintiff's allegations are sufficient to permit a reasonable inference at the pleading stage that Drs. Hoffman and O'Brien may have acted with deliberate indifference by declining to pursue other, necessary treatment options, such as stronger or different pain medication and an orthopedic surgery referral, particularly when they know all of the more conservative treatments they have tried have been ineffective. *Daley*, 414 F.3d at 655 (deliberate indifference can include persisting in treatment "known to be ineffective"); *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011) ("physicians were obligated not to persist in ineffective treatment"). Accordingly, plaintiff may proceed on

deliberate indifference claims against Drs. Hoffman and O'Brien.[3]

Whether plaintiff may also proceed against HSU Manager Barker is a closer question. Initially, plaintiff was not allowed to proceed against Barker because his or her role in the events giving rise to this litigation appeared limited to facilitating a March 2018 meeting between plaintiff and Dr. Hoffman in response to plaintiff's formal complaints. (Dkt. #12 at 18.) Plaintiff now adds that in addition to contacting Barker in January, February and March 2018, he also wrote Barker again in April 2018 complaining of chronic knee pain and deliberate indifference to his shoulder condition, and in May 2018, asking for shoulder surgery and indicating that he was still in pain. It does not appear Barker responded to either of those requests. Similarly, on June 23, 2018, plaintiff filed a complaint against Barker, Hoffman and O'Brien alleging that O'Brien had been refusing to see plaintiff for the previous six months. Plaintiff claims that he also indicated his condition had gotten worse, that he was experiencing pain, and that Hoffman and O'Brien were refusing to refer him for an orthopedic surgery consult. Again, Barker allegedly did nothing.

Ambiguities remain regarding the extent of Barker's personal knowledge of and involvement in plaintiff's medical treatment, as well as whether and how Barker responded to each of plaintiff's complaints and follow up requests for intervention in light of

---

[3] Even so, plaintiff should be aware that at summary judgment or trial, it may not be enough to show that he and other doctors disagreed with Hoffman's and O'Brien's conclusions about the appropriate treatment, *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006), or even that they were mistaken, *Lee v. Young*, 533 F.3d 505, 511-12 (7th Cir. 2008). Rather, plaintiff will have to show that any medical judgment by these defendants was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" his condition. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (internal quotations omitted).

seemingly conflicting medical opinions. Ultimately, fact-finding may well reveal that Barker was justified in failing to do more, that Barker was reasonably deferring to the medical judgments of Drs. Hoffman and O'Brien, or that Barker did take reasonable measures in response to plaintiff's complaints. However, each of those factual issues is for another day, since at this stage the court construes all ambiguities and draws all inferences in plaintiff's favor. Finally, plaintiff's additional allegations about Barker permit a reasonable inference that he or she was not only aware of plaintiff's ongoing debilitating pain and worsening medical condition -- and of a lack of urgency on the part of Drs. Hoffman and O'Brien to provide treatment -- but also that Barker failed to take any steps to ensure that plaintiff received adequate treatment after facilitating an initial meeting with Dr. Hoffman, despite being in a position to do so and even after receipt of conflicting opinions by medical specialists. Accordingly, the court will allow plaintiff to proceed past the screening stage against defendant Barker on an Eighth Amendment claim.

### B. Wisconsin state law negligence claims

Finally, plaintiff seeks to proceed on state law negligence claims against Dr. Hoffman, Dr. O'Brien and HSU Manager Barker. Jurisdiction is proper over these claims under 28 U.S.C. §1367(a), which states that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." As noted above, the standard of proof for a Wisconsin common law negligence claim is lower than that for an Eighth Amendment deliberate indifference claim. The specific elements of a cause of action in negligence are: (1) a duty

of care or a voluntary assumption of a duty on the part of the defendant; (2) a breach of the duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 319, 401 N.W.2d 816, 822 (1987).

For the same reasons that plaintiff is being granted leave to proceed on deliberate indifference claims against defendants Hoffman, O'Brien and Barker, he may proceed on his negligence claims against them. More specifically, all three defendants owe plaintiff a duty of care, and their alleged failure to treat his condition adequately (or at all) supports a reasonable inference that they breached their duty of care, which led plaintiff to suffer unnecessarily.

ORDER

IT IS ORDERED that:

1) Plaintiff Emmanuel Page's motion for reconsideration (dkt. #13) is DENIED as moot.

2) Plaintiff's motion to amend (dkt. #14) is GRANTED.

3) Plaintiff is GRANTED leave to proceed on Eighth Amendment deliberate indifference claims and on Wisconsin state law negligence claims against defendants Dr. Hoffman, Dr. O'Brien, and HSU Manager Barker.

4) The attorney general's office has until **May 6, 2020**, to notify the court whether it will be accepting service on behalf of Hoffman, O'Brien and Barker.

Entered this 22nd day of April, 2020.

BY THE COURT:
/s/
_____
WILLIAM M. CONLEY
District Judge