IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EMMANUEL PAGE,

                  Plaintiff,                  OPINION AND ORDER

v.

                                            17-cv-450-wmc

DOCTOR HOFFMAN, DOCTOR O'BRIEN
CANDACE WARNER, KOREEN FRISK,
MELISSA LODGING, AND BARKER,

                  Defendants.

*Pro se* plaintiff Emmanuel Page is proceeding in this civil lawsuit against health care employees at New Lisbon Correctional Institution on Eighth Amendment and negligence claims for delaying or failing to provide adequate medical care for his chronic pain issues. Before the court is a motion for a protective order relieving defendants Hoffman, O'Brien, Warner, Frisk, and Barker (the "state defendants") from responding to Page's 266 requests for admissions ("RFAs") or alternatively for an extension of time to respond to those requests. (Dkt. #36.) Also before the court are Page's two renewed motions for assistance in recruiting counsel.[1] (Dkt. ##39, 46.) For the following reasons, the court will deny in part and grant in part the state defendants' motion and will also deny without prejudice Page's motions.

**I. Motion for a Protective Order**

Federal Rule of Civil Procedure 26(c)(1) provides that "[t]he court may, for good

---

[1] Page also moves to supplement his motion for assistance in recruiting counsel with copies of letters he received from law firms declining to represent him in this matter. (Dkt. #43.) The court will grant this motion without further comment and consider these supplemental filings.

cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking the protective order must establish good cause for the relief it seeks. Fed. R. Civ. P. 26(c)(1); *Milwaukee Elec. Tool Corp. v. Chervon N. Am. Inc.*, No. 14-CV-1289-JPS, 2017 WL 1435735, at *3 (E.D. Wis. 2017). To establish good cause under Rule 26(c), "the party must demonstrate a particular need for protection." *Milwaukee Elec. Tool Corp.*, 2017 WL 1435735, at *3. Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

The state defendants seek a protective order relieving them of responding to any of Page's 266 RFAs. The basis for these defendants' request is threefold: (1) the number of RFAs is unreasonable; (2) many RFAs are phrased in a way that does not allow for the statement of fact to be admitted or denied without explanation; and (3) at least 53 RFAs concern plaintiff's alleged knee pain, while neither the court's original screening order nor its order on plaintiff's motion for reconsideration appear to screen through any claims related to the treatment of plaintiff's knees. Page counters that these objections lack merit, and emphasizes that he still wants to proceed on claims of inadequate treatment of his shoulder *and* knee pain.

A. Plaintiff's Claims

Underlying the parties' discovery dispute is a dispute concerning the claims on which plaintiff is proceeding: whether on deliberate indifference and negligence claims related only to the alleged inadequate treatment of a shoulder injury or also on claims

2

related to alleged chronic knee pain. As a threshold matter, the court must clarify its prior screening orders with respect to plaintiff's allegations of inadequately treated chronic knee pain. Having reviewed those orders, as well as plaintiff's amended pleading in light of the dispute these parties are presenting now, plaintiff may proceed on deliberate indifference and state law negligence claims related to his knee pain against the following defendants: Doctor Hoffman, Doctor O'Brien, and Health Services Unit ("HSU") Manager Barker.

The prior screening orders state that plaintiff's allegations concerning his chronic shoulder pain support a reasonable inference that he had an objectively serious medical need. (Dkt. ##12 at 9, 22 at 6.) Plaintiff alleges in his amended complaint that his knee pain remains chronic and debilitating, which suffice to allow the same inference. *See, e.g., Gaston v. Ghosh*, 498 F. App'x 629, 632 (7th Cir. Dec. 20, 2012). The allegations in that complaint further support the conclusion that Doctors Hoffman and O'Brien, as well as HSU Manager Barker, were aware of plaintiff's knee condition, but took no steps to relieve his pain.[2]

Plaintiff further alleges that as of 2016, he had been taking the pain medication meloxicam for knee pain. During examinations on May 1 and June 23, 2017, and on March 16, 2018, plaintiff alleges that Doctor Hoffman refused various diagnostic and additional treatment options, including a cortisone injection, an MRI, stronger pain

---

[2] Plaintiff also alleges that he complained about his knee pain to the HSU generally on December 11, 2017, and on January 8 and February 2, 2018, but he does not allege who, if anyone, considered or responded to his complaint. (Dkt. #15 at 13-14.) Accordingly, except to the extent that HSU Manager Baker may be held ultimately responsible, these allegations do not support a claim against any other individual defendant. *See Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) (plaintiff cannot rely on "vague references" to defendants "without specific allegations tying the individual defendants to the alleged unconstitutional conduct").

3

medication, surgery, or a lower tier restriction allowing plaintiff to avoid stairs, even after plaintiff indicated he had difficulty walking. Plaintiff claims he received a similar response from Doctor O'Brien, who plaintiff had seen in 2017 for shoulder pain and who knew plaintiff took meloxicam. When plaintiff saw Doctor O'Brien on August 6, 2018, and "talked about both knees begging for surgery," this doctor also allegedly did nothing. (Dkt. #15 at 16.) Similarly, plaintiff alleges that he complained to Barker on January 25 and April 22, 2018, of chronic knee pain and asked for more effective treatment including surgery, but "[n]othing was done." (Dkt. #15 at 15.)

These allegations are sufficient to proceed on deliberate indifference claims related to plaintiff's chronic knee pain against these defendants. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (allegations of delayed care could constitute deliberate indifference if the alleged delay caused the inmate's condition to worsen or unnecessarily prolonged his pain); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (deliberate indifference can include persisting in treatment "known to be ineffective"). Moreover, plaintiff has also stated negligence claims involving his knee treatment. As noted in the court's most recent screening order, these three defendants "owe plaintiff a duty of care, and their alleged failure to treat his condition adequately (or at all) supports a reasonable inference that they breached their duty of care, which led plaintiff to suffer unnecessarily." (Dkt. #22 at 11.)

### B. The State Defendants' Objections to Plaintiff's RFAs

With plaintiff's claims now clarified, the court will not relieve the state defendants from responding to plaintiff's RFAs related to his chronic knee pain. Nor will the court grant the state defendants relief based solely on the number of RFAs. Although plaintiff's

4

requests are numerous, that is not in itself a basis for a protective order; Federal Rule of Civil Procedure 36 does not state a numerical limit for RFAs and the total number of requests here is not unprecedented. *See, e.g., Layne Christensen Co. v. Purolite Co.*, No. 09-2381-JWL-GLR, 2011 WL 381611, at *1 (D. Kan. Jan. 25, 2011) (denying a protective order that would have relieved a party from responding to 626 RFAs); *Gen. Elec. Co. v. Prince*, No. 06 Civ. 0050 SAS MHD, 2007 WL 86940, at *2 (S.D.N.Y. Jan. 10, 2007) (denying a protective order for 573 RFAs); *Davis v. Harding*, No. 12-cv-559-wmc, 2013 WL 4509491, at *1 (W.D. Wis. Aug. 26, 2013) (Crocker, Mag. J.) (denying motion to quash 826 RFAs).

The state defendants add that many of the RFAs do not allow for a simple admit or deny without further explanation. *See Rapp v. Laufers*, 17-cv-948-bbc, 2019 WL 121105, at *3 (W.D. Wis. Jan. 7, 2019) (Crocker, Mag. J.) (noting that an RFA "should be phrased so that it can be clearly admitted or denied without explanation" and a request calling for interpretation, conjecture, opinion, conclusions of law, or suspicions are objectionable) (quoting *Pittsburgh Hotels Ass'n v. Urban Redev. Auth. Of Pittsburgh*, 29 F.R.D. 512, 513 (W.D. Pa. 1962)). However, the only specific RFA the state defendants reference in support is no. 80,[3] in which plaintiff asks them to admit that:

> [On] June 23, 2017 failed to order MRI to both of Page's knees, failed to order stronger pain medication to Page's shoulder pain, and failed to order Page a lower tier restriction.

(Dkt. #37-1 at 9.) Defendants note that this request does not specify the medical provider,

---

[3] The state defendants' motion references request no. 78, but the request they quote matches no. 80 in the attached copy of plaintiff's RFAs. (*See* dkt. ##36 at 2, 37-1 at 9.)

5

but in light of the factual allegations in the complaint and in context with RFAs no. 75-79, it is a safe inference that plaintiff is referring to his visit that day with Doctor Hoffman. Further, while "failed to" is not as neutral a phrase as, for example, "did not," the court cannot conclude that confirming or denying which treatment options Doctor Hoffman recommended on the specified date would require interpretation, opinion, or conjecture, or a lengthy explanation, nor can the court guess at which other individual RFAs the state defendants could take issue with. Plaintiff's RFAs are generally straightforward statements, and the state defendants are obliged only to admit or deny an RFA and explain if necessary. Fed. R. Civ. P. 36(a)(4) ("If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."). Moreover, this fact-intensive lawsuit involves six defendants, two chronic medical conditions, and several years of treatment history. Accordingly, the court cannot conclude that the number of plaintiff's RFAs -- even though responding to some requests will require explanation -- is reason to strike them all. Regardless, absent evidence of wholesale violations, the burden falls on defendants to object in good faith to specific requests that violate the requirements of Rule 36.

That said, the court will grant the state defendants' request for a 30-day extension to respond, and they remain free to object specifically to other individual requests or groups of requests as is appropriate under the rules.

## II. Renewed Motions for Assistance in Recruiting Counsel

Finally, the court will deny without prejudice plaintiff's renewed motions for assistance in recruiting counsel. Unfortunately, as plaintiff is aware, a *pro se* litigant does

not have a right to counsel in a civil case. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). Instead, a district court has discretion to assist pro se litigants in finding a lawyer to represent them. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). A party who wants assistance from the court in recruiting counsel must meet certain requirements. *Santiago v. Walls*, 599 F.3d 749, 760-61 (7th Cir. 2010).

To begin, plaintiff has shown that (1) he is unable to afford counsel and (2) he made reasonable efforts on his own to find a lawyer to represent him. (Dkt. ##4, 43.) However, he must also show that his is one of the relatively few cases where the legal and factual difficulty of the case exceeds the litigant's demonstrated ability to prosecute it. *Pruitt*, 503 F.3d at 654-55. "The question is not whether a lawyer would present the case more effectively than the *pro se* plaintiff," but instead whether the *pro se* litigant can "coherently present [his case] to the judge or jury himself." *Id*. at 655. To that end, plaintiff claims that: (1) his discovery dispute with the state defendants underscores his inability to litigate this case; (2) opposing counsel are not being responsive to his discovery requests; and (2) this case involves four years of medical care and may turn on expert testimony. (Dkt. ##39, 46.)

At this early stage, the court remains unconvinced that plaintiff is unable to continue litigating this case. Only screening has been completed, and defendants did not pursue summary judgment on exhaustion grounds, meaning plaintiff's near-term obligations only include preparing and responding to discovery requests. While plaintiff's relevant medical treatment spans several years, he has personal knowledge of his medical conditions and treatment, and at least so far, plaintiff's filings have been readable,

articulate, and reflect an understanding of the relevant legal standards and the nature of his claims.

Moreover, to the extent a discovery dispute arose, this is not uncommon, and its resolution was straightforward. If anything, in propounding his requests for admissions and successfully defending against the state defendants' motion for a protective order, plaintiff has shown that he is very much capable of the tasks at hand and can effectively advocate for himself. To the extent defendants are not adequately responding to plaintiff's discovery requests consistent with the Federal Rules of Civil Procedure, plaintiff may file a motion to compel, just as may the defendants' counsel.

Finally, plaintiff is also concerned that he will need an expert to prove his claims, but it is too early to tell. Although a plaintiff may be required to present expert testimony to establish the standard of care in a Wisconsin medical negligence case, *see Christianson v. Downs*, 90 Wis.2d 332, 338, 279 N.W.2d 918, 921 (1979), and such testimony may also be required to assess the adequacy of the treatment received under the deliberate indifference standard, *see, e.g.*, *Perez v. Fenoglio*, 792 F.3d 768, 785 (7th Cir. 2015), there are some situations in which it is not required. For example, expert testimony is not required if "the situation is one in which common knowledge affords a basis for finding negligence," *Sheahan v. Suliene*, No. 12-cv-433, 2014 WL 1233700, at *9 (W.D. Wis. Mar. 25, 2014), or where a claim turns "on historical facts as opposed to medical evidence," *Redman v. Doehling*, 751 F. App'x 900, 905 (7th Cir. 2018). Until this case progresses further, and the parties have presented their respective version of events, the court cannot determine whether the case will ultimately boil down to issues requiring medical expertise

or can be resolved on evidence obtained from plaintiff's medical records and the parties' personal knowledge alone.

The court will, therefore, deny without prejudice plaintiff's motions for assistance in recruiting counsel. However, plaintiff should know that the court would recruit counsel for every *pro se* plaintiff who asked for one, if there were enough volunteer attorneys to take on such representation. The fact is that there are not. In the past year, the court has had little success in finding counsel for several cases. In the meantime, the claims of these litigants have been delayed significantly. Even for a simple case, it often takes months for the court to locate counsel willing to accept the case. For this reason, the court must carefully consider each plaintiff's abilities and the complexity of the claims in determining whether to recruit counsel in any particular case. Should these factors come into greater focus before, at or following summary judgment, plaintiff is welcome to renew his motion.

ORDER

IT IS ORDERED that:

1) The state defendants' motion for a protective order is DENIED IN PART AND GRANTED IN PART. Defendants' may have 30 days from the date of this order to respond properly to plaintiff Emmanuel Page's requests for admissions. (Dkt. #36.)

2) Plaintiff Emmanuel Page's motion to supplement (dkt. #43) is GRANTED.

3) Plaintiff's motions for assistance with recruitment of counsel (dkt. ##39, 46) are DENIED without prejudice.

Entered this 13th day of October, 2020.

                BY THE COURT:

                /s/

                _____
                WILLIAM M. CONLEY
                District Judge